UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MORGANS GROUP LLC and MORGANS
HOTEL GROUP MANAGEMENT LLC,

                Plaintiffs,

  -against-

JOHN DOE COMPANY d/b/a HUDSON
TERRACE, MICHAEL SINENSKY, AND
SEAN MCGARR,
                Defendants.
------------------------------------------------------------x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/12
```

10 CV 5225 (KMW) (HBP)
**OPINION & ORDER**

WOOD, U.S.D.J.:

      Plaintiffs Morgans Group LLC and Morgans Hotel Group Management LLC (collectively, "Morgans") are the owners of the Hudson Hotel (the "Hotel") in Manhattan's "Hell's Kitchen" neighborhood, which is adjacent to the Hudson River. On the 15th floor of the Hotel, Morgans operates a rooftop bar and lounge called "Sky Terrace." About one mile away, Defendants John Doe Company d/b/a Hudson Terrace, Michael Sinensky, and Sean McGarr (collectively, "Hudson Terrace") operate an indoor/outdoor bar and lounge called "Hudson Terrace." In this action, Morgans seeks, *inter alia*, to enjoin Hudson Terrace's use of the name "Hudson Terrace" on the ground that it is confusingly similar to the names "Hudson Sky Terrace" and "Sky Terrace at Hudson"—names in which Morgans claims an interest. Morgans asserts the following claims: (1) false designation of origin and federal unfair competition pursuant to Section 43 of the Lanham Act, codified at 15 U.S.C § 1125(a); (2) trademark dilution pursuant to New York General Business Law ("N.Y.G.B.L.") § 360-l; (3) deceptive acts and practices pursuant to N.Y.G.B.L. § 349; and (4) trademark infringement and unfair competition under New York common law. Hudson Terrace asserts nearly identical counterclaims with respect to the name "Hudson Terrace;" it seeks to enjoin Morgans' use of the name "Hudson Sky Terrace," which it

1

Terrace," which it claims is confusingly similar to "Hudson Terrace."[1] Morgans moves for summary judgment on its claims as well as Hudson Terrace's counterclaims. (Dkt. No. 31.) Hudson Terrace moves for summary judgment on Morgans' claims only. (Dkt No. 25.) For the reasons stated below, the Court DENIES Morgans' motion for summary judgment and GRANTS Hudson Terrace's motion for partial summary judgment.

## I. BACKGROUND

### A. Facts[2]

#### i. *Sky Terrace*

Since 2000, Morgans has operated the Hotel on West 58th Street between 8th and 9th Avenues in Manhattan's Hell's Kitchen neighborhood. (Asher Decl., Ex. 1.) On the 15th floor of the Hotel, Morgans maintains "Sky Terrace," a private, landscaped outdoor terrace, which it advertises as an outdoor bar and lounge space styled as a "modern interpretation of a traditional English garden." (*Id.*) Sky Terrace is open seasonally, from approximately May to October each year. (Pl. 56.1 Stmt., Resp. to Assertion 13.) During that period, the venue operates daily from 12 p.m. to 10 p.m. (Asher Decl., Ex. 1.) Sky Terrace has a maximum capacity of 150 persons. (Pl. 56.1 Stmt., Resp. to Assertion 14.)

Until April 2009, Sky Terrace was advertised as open exclusively to hotel guests, Morgans Hotel Group Global Card Members, or select others to whom Morgans extended an

---

[1] It asserts an additional claim for false advertising under Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a).

[2] Unless otherwise noted, the following factual background is undisputed and derived from: Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 ("Def. 56.1 Stmt."); Plaintiffs' Response to Defendants' 56.1 Statement and Counterstatement of Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1 Stmt."); Defendants' Response to Plaintiffs' Counterstatement of Material Facts Pursuant to Local Rule 56.1 ("Def. 56.1 Counterstmt."); the Declaration of Monica S. Asher in Support of Plaintiffs' Motion for Summary Judgment ("Asher Decl."); the Declaration of Dorothy M. Weber in Support of Defendants' Motion for Partial Summary Judgment ("Weber Decl."); and the Declaration of Dorothy M. Weber in Opposition to Plaintiffs' Motion for Summary Judgment ("Weber Decl. in Opp.").

invitation. (*Id.*, Resp. to Assertion 12.) Beginning in April 2009, Morgans advised media outlets that it was open to the public. (*Id.*) Morgans states that although advertised as "invitation-only" prior to April 2009, Sky Terrace was in fact always open to the public. (*Id.*)[3]

Notwithstanding its "public opening" announcement in April 2009, the overwhelming majority of Sky Terrace's patronage appears to consist of hotel guests, invited "tastemakers," and attendees of private events that occasionally include appearances by celebrities and well-known New Yorkers. (*See, e.g.*, Asher Decl., Exs. 3, 19, 37, 39.) Sky Terrace has also been used as a shooting location for nationally distributed television shows and photographs accompanying magazine articles. (*See, e.g.*, Asher Decl., Exs. 24, 25, 26, 30, 71.) Print media coverage of Sky Terrace consists primarily, if not exclusively, of listings in New York City bar or "rooftop bar" guides.[4] (*See, e.g.*, Asher Decl., Exs. 35, 48, 51, 53, 55, 58, 60, 69, 70, 73, 79.)

Morgans refers to Sky Terrace interchangeably as either "Sky Terrace," "Sky Terrace at Hudson," or "Hudson's Sky Terrace." (Pl. 56.1 Stmt. ¶ 26.) On its website and on signage at the Hotel, Morgans uses the name "Sky Terrace" only. (*Id.*, Resp. to Assertion 8.) Morgans does not use the marks "Hudson Sky Terrace" or "Hudson Terrace" to refer to Sky Terrace. (Pl. 56.1 Stmt., Resps. to Assertions 6, 7, 8; Pl. Mem. of Law in Supp. of Mot. for Summ. J. (hereinafter "Pl. Mem. in Supp.") at 8.) However, third party media coverage often refers to the venue as "Hudson Sky Terrace," in addition to using the names "Sky Terrace," "Hudson's Sky Terrace," "Sky Terrace at the Hudson," "Sky Terrace at the Hudson Hotel," "Sky Terrace @ Hudson

---

[3] Hudson Terrace disputes this assertion, and claims that Sky Terrace is not now, nor has ever been, open to the public. The weight of the evidence in the record shows that if Sky Terrace was technically open to the public since its inception, the Hotel has continuously sought to convey the message that Sky Terrace was exclusive to "hotel guests, Morgans Hotel Group Global Card holders, and select New York influencers." (Weber Decl. in Opp., Ex. B; *see also* Asher Decl., Exs. 22, 28; Weber Decl., Ex. G.)

[4] Two notable exceptions to this are references to Sky Terrace in the women's fashion magazine *Vogue* and the *New York Post* newspaper's "Page Six" gossip column. (Asher Decl., Ex. 59, 33.)

Hotel," "Hudson Hotel's Sky Terrace," "Hudson Hotel Sky Terrace," "Hudson Sky Terrace (Hudson Hotel)," and "New York Sky Terrace." (Pl. 56.1 Stmt., Resp. to Assertion 9; *see, e.g.*, Asher Decl., Exs. 31, 33-35, 37, 41-42, 44, 48, 51-52, 54-55, 58-59, 67-73, 80.)

### *ii. Hudson Terrace*

Hudson Terrace is a 13,000 square foot, bi-level entertainment venue located on 46th Street between 11th and 12th Avenues, approximately one mile from Sky Terrace. (Def. 56.1 Stmt. ¶ 1; Weber Decl., Ex. N.) Hudson Terrace first opened in 2008 as a venue for private events; in May 2009, it opened to the public. (Pl. 56.1 Stmt. ¶ 29; Def. 56.1 Counterstmt., Resp. to Assertion 4.) Hudson Terrace is comprised of three main spaces: the Salon, which is an indoor area with a capacity of up to 400 people; the Garden Terrace, an outdoor space on the same floor as the Salon, with a capacity of up to 150 people; and the Rooftop Garden Lounge, which is an open-air rooftop with a capacity of up to 300 people. (Weber Decl., Ex. N.) With the aid of temperature-regulated flooring and glass-enclosed, heated cabanas, Hudson Terrace keeps the Rooftop Garden Lounge open year-round.[5] (*Id.*) Except for private events, Hudson Terrace is open on Fridays and Saturdays from 10 p.m. to 4 a.m. (*Id.*)

Hudson Terrace has been the subject of national media coverage, where it is described as a crowded, popular nightlife "hotspot" often frequented by high-profile celebrities.[6] (*See* Weber Decl., Ex. C.) For instance, in September 2010, the venue was featured on NBC's staple television program "The Today Show," where it was selected nationally by viewers as one of three venues for a "dream wedding" in New York City. (Def. 56.1 Stmt. ¶ 18.)

---

[5] It is not clear whether the smaller outdoor space, the Garden Terrace, is open year-round in addition to the Rooftop Garden Lounge, which is Hudson Terrace's main outdoor space.
[6] For example, the venue has been mentioned or profiled in *The New York Times*, *The Wall Street Journal*, and a variety of nationally circulated, popular tabloids.

### B. Procedural History

Morgans filed its Complaint on July 8, 2010, alleging: (1) false designation of origin and federal unfair competition pursuant to Section 43 of the Lanham Act, codified at 15 U.S.C § 1125(a); (2) trademark dilution pursuant to New York General Business Law ("N.Y.G.B.L.") § 360-1; (3) deceptive acts and practices pursuant to N.Y.G.B.L.§ 349; and (4) trademark infringement and unfair competition under New York common law. (Dkt. No. 1.) Morgans claims rights in the marks "Hudson Sky Terrace" and "Sky Terrace at Hudson," and seeks to enjoin Hudson Terrace's use of the name "Hudson Terrace" on the ground that it is confusingly similar to the names in which Morgans claims an interest. (*Id.*) On October 21, 2010, Hudson Terrace filed an Amended Answer to the Complaint, and alleged counterclaims almost identical to the claims asserted by Morgans. (Dkt. No. 17.) Hudson Terrace counterclaims a right in the name "Hudson Terrace" and seeks to enjoin Morgans' use of the name "Hudson Sky Terrace," which it claims is confusingly similar to "Hudson Terrace." (*Id.*)

On June 3, 2011, the parties cross-moved for summary judgment. Morgans moves for summary judgment on all of its claims, as well as dismissal of Hudson Terrace's counterclaims. (Dkt. No. 31.) Hudson Terrace moves for partial summary judgment only, seeking adjudication of Morgans' claims but not of its own counterclaims. (Dkt. No. 25.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Miner v. Clinton Cty., N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008). Summary judgment will

be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Once the movant satisfies its burden, the onus shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-moving party. *Anderson*, 477 U.S. at 248; *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009). "If reasonable minds could differ as to the import of the evidence and if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party . . . cannot obtain a summary judgment." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988) (internal quotation omitted).

In reviewing the record, the Court construes all evidence "in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 271 (2d Cir. 2011). Where, as here, both parties seek summary judgment, the Court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Scwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981).

## III. MORGANS' LANHAM ACT CLAIM

### A. Applicable Law

Section 43(a) of the Lanham Act is a federal unfair competition statute which prohibits, *inter alia*, the "false designation of origin" in relation to goods and services. 15 U.S.C. § 1125(a). The statute is designed "to eliminate the confusion that is created in the marketplace by the sale of products [or services] bearing highly similar marks." *Malletier v. Burlington Coat*

*Factory Warehouse Corp.*, 426 F.3d 532, 539 (2d Cir. 2005). To prevail on a claim under § 43(a), a plaintiff must show that: (1) it has a valid trademark or trade name[7] entitled to protection, and (2) the defendant's use of a similar name is likely to cause confusion among consumers as to the origin of the goods or services. *Malletier v. Dooney & Burke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2005). Both conditions must be met; where a plaintiff cannot establish that its mark is entitled to protection, a court need not consider whether a defendant's use of a similar mark is likely to cause confusion. *See Thompson Med. Co. v. Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir. 1985).

### *i. Validity of the Mark*

To be entitled to protection, a trademark or trade name must be sufficiently distinctive to link a product or service to its source. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768-69 (1992); *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999) (internal quotation omitted). The framework developed by the Second Circuit to gauge distinctiveness separates marks into four broad categories. "Arrayed in ascending order which roughly reflects their eligibility to trademark status and the degree of protection accorded, these

---

[7] Although the parties have referred to the marks at issue as "trademarks," they are more properly characterized as "trade names," which are names used to identify businesses as opposed to the goods or services those businesses sell. *See* 15 U.S.C. § 1127 (defining a trade name under the Lanham Act as "any name used by a person to identify his or her business or vocation"); *see also* Restatement (Third) of Unfair Competition § 12 (1995) (defining a trade name as "a word, name, symbol, device, or other designation, or a combination of such designations, that is distinctive of a person's business or other enterprise and that is used in a manner that identifies that business or enterprise and distinguishes it from the businesses or enterprises of others"). The primary legal distinction between a trademark and a trade name is that the latter cannot be federally registered. Despite this difference, trade name infringement is protected under § 43(a) of the Lanham Act, and the same criteria used to determine the validity of trademarks are used to determine the validity of trade names. *See Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 579 (2d Cir. 1991); *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1535 (9th Cir. 1989). To facilitate reference to case law that assesses trademarks but is nevertheless governing and/or relevant, the Court uses the terms "mark" and "name" interchangeably.

7

classes are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *Bristol-Myers Squibb Co., v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1039 (2d Cir. 1992). Suggestive, arbitrary, or fanciful marks are deemed inherently distinctive "because their intrinsic nature serves to identify a particular source of a product." *Id.* at 1039 (quoting *Two Pesos*, 505 U.S. at 768). By contrast, generic marks are not accorded any trademark status, because they merely identify the class or genus of goods or services to which a particular product or service belongs, rather than describe a particular characteristic of the product or service. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). Positioned between these two extremes are descriptive marks, which "convey[] an immediate idea of the ingredients, qualities, or characteristics of the goods." *Bernard v. Commerce Drug Co.*, 964 F.2d 1338, 1341 (2d Cir. 1992) (internal quotation omitted).

Although it is not inherently distinctive, a descriptive mark is afforded protection when it has acquired distinctiveness through "secondary meaning," such that "in the minds of the public, the primary significance of [the] mark is to identify the source of the product rather than the product itself." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000) (internal quotation omitted). "The crux of the doctrine . . . is that the mark comes to identify not only the goods but the source of those goods, even though the relevant consuming public might not know the name of the producer." *Centaur Commc'ns Ltd. v. A/S/M Commc'ns Inc.*, 830 F.2d 1217, 1221 (2d Cir. 1987) (internal quotation omitted), *abrogated by Bristol-Myers Squibb Co., v. McNeil-P.P.C., Inc.*, 973 F.2d 1033 (2d Cir. 1992). Secondary meaning analysis centers not on the public at large, but rather the consumer group relevant to the product or service. *Id.* at 1222. A plaintiff must show that "a substantial segment" of the relevant consumer group makes the "requisite association between the product and the producer." *Id.*

Whether a mark has acquired secondary meaning "is a question of fact with the burden of proof on the party claiming exclusive rights in the designation." *Bristol-Myers*, 973 F.2d at 1041 (internal quotation omitted). A plaintiff "bears the vigorous evidentiary burden of proving by a preponderance of the evidence that his mark had acquired secondary meaning at the time defendant began his allegedly infringing activities." *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 652 F. Supp. 1105, 1108 (S.D.N.Y. 1987) (Pollack, J.) Courts have found the following factors most relevant in determining whether a plaintiff has met its evidentiary burden: (1) advertising and promotional efforts; (2) consumer surveys linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product or service; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use. *Bristol-Myers*, 973 F.2d at 1041. The factors are non-exclusive, and the presence or absence of any one factor is not dispositive. *See Thompson Med. Co.*, 753 F.2d at 217.

### ii. Likelihood of Confusion

Once a plaintiff proves that its descriptive mark has acquired a secondary meaning and is therefore entitled to protection, it must show that the defendant's use of a similar mark is likely to cause consumer confusion. In *Polaroid Corp. v. Polaroid Elec. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), the Second Circuit identified eight non-exclusive factors relevant to this inquiry: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the marks; (3) the proximity of the products; (4) the likelihood that the plaintiff will bridge the gap between the two products; (5) actual confusion of customers in the relevant market; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers. The *Polaroid* test "is not a mechanical process where the party with the greatest number of factors weighing in its factor wins. Rather, a court should focus on the ultimate question of

whether consumers are likely to be confused." *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000). Although no single factor is necessarily dispositive, "any one factor may prove to be so." *Nora Beverages, Inc. v. Perrier Grp. of Amer., Inc.*, 269 F.3d 114, 119 (2d Cir. 2001).

## B. Application of Law to Facts

### i. Validity of Morgans' Marks

The parties both agree,[8] as does the Court, that the terms "Hudson Sky Terrace," "Sky Terrace at Hudson," and "Hudson Terrace" are all geographically descriptive, insofar as the primary significance of the marks is to designate the venues' proximity to the Hudson River, and physically descriptive, insofar as "sky" refers to their elevated locations and "terrace" describes their status as open, deck-like spaces. In order to be entitled to protection, they must therefore have acquired secondary meaning. *See Forschner Grp. v. Arrow Trading Co.*, 30 F.3d 348, 353-54 (2d Cir. 1994) ("[A] phrase or term that is descriptive of the geographic origin of a product will not receive trademark protection absent proof of secondary meaning."). Therefore, for the purpose of adjudicating Morgans' motion, the first question is whether either "Hudson Sky Terrace" or "Sky Terrace at Hudson" has acquired secondary meaning.[9] On the record before it,

---

[8] *See* Pl. Mem. in Opp. to Defs.' Mot. for Summ. J. (hereinafter "Pl. Mem. in Opp.") at 11-12; Def. Mem. in Supp. of Mot. for Partial Summ. J. (hereinafter "Def. Mem. in Supp.") at 12.

[9] Hudson Terrace argues that the Court need not reach the question of whether "Hudson Sky Terrace" has acquired secondary meaning, because Morgans does not actually use the mark to refer to Sky Terrace and therefore cannot claim rights in the mark in the first instance. *See ITC Ltd. V. Punchgini, Inc.*, 482 F.3d 135, 147 (2d Cir. 2007) (noting "the well-established principle that trademark rights are acquired and maintained through *use* of a particular mark") (emphasis added).

    Morgans concedes that it does not itself use the mark, but contends that the media's use of the mark is sufficient to establish Morgans' ownership rights in it. Morgans cites to, *inter alia, Nat'l Cable Television Assoc., Inc. v. Am. Cinema Editors, Inc.*, 937 F.2d 1572, 1577-78 (Fed. Cir. 1991) for the proposition that public use of the mark—even absent use by the party claiming rights in the mark—may be considered use by the claimant itself. In that case, the Federal Circuit found that the claimant had actually used the mark, but noted in *dicta* that "even

10

the Court concludes that a reasonable juror could not find that either term has acquired secondary meaning.

As discussed in Part III.A.i, *supra*, secondary meaning is determined in relation to the "relevant buyer class," and not the public in general. *Centaur Commc'ns*, 652 F. Supp. at 1109. In this case, the relevant buyer class consists primarily of consumers who are likely to patronize both establishments, as well as local industry professionals (*i.e.*, New York City bar, lounge, and nightlife promoters and press). To determine whether a trademark or trade name has acquired secondary meaning among this consumer group, the Court examines the following six factors: (1) advertising and promotional efforts; (2) consumer surveys linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product or service; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use. *Bristol-Myers*, 973 F.2d at 1041.

### *1. Advertising and Promotional Efforts*

Advertising expenditures provide circumstantial evidence of the possible effect that advertising of the trademark or trade name may have on consumers' association of it with the

---

without use directly by the claimant . . . abbreviations and nicknames of trademarks or names used *only* by the public give rise to protectable rights in the owners of the trade name or mark which the public modified. Such public use by others inures to the claimant's benefit and, where this occurs, public use can reasonably be deemed use 'by' that party in the sense of a use on its behalf." *Id.* (emphasis in original).

Although the Second Circuit has thus far declined to address the issue, *see Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 812 (2d Cir. 1999), the Seventh Circuit, in *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 434 (7th Cir. 1999), and two courts in this district, in *Phillips-Van Heusen Corp. v. Calvin Clothing Co.*, 444 F. Supp. 2d 250, 255 (S.D.N.Y. 2006) (Rakoff, J.) and *Hawaii-Pacific Apparel Grp. v. Cleveland Browns Football Co.*, 418 F. Supp. 2d 501, 508 n.12 (S.D.N.Y. 2006) (Chin, J.), have cited with approval the principle enunciated in *National Cable Television Assoc., Inc.* In each of these cases the principle was approved in *dicta* only, because the claimants were found to have also used the marks themselves, such that their rights in the marks were not based on public use alone.

The Court declines to decide whether public use alone can confer trademark rights upon a claimant, because, even assuming that the media's use of the mark "Hudson Sky Terrace" could inure to Morgans' benefit, Morgans has failed to establish that the term has acquired secondary meaning.

11

source of a product or service. *Centaur Commc'ns,* 830 F.2d at 1222. Morgans has not produced any evidence of expenditures to promote the marks "Hudson Sky Terrace" or "Sky Terrace at Hudson." To the contrary, Morgans claims that it has gone to considerable lengths to *discourage* media references to Sky Terrace as "Hudson Sky Terrace." (*See, e.g.,* Asher Decl., Ex. 89; *see also* Pl. Mem. in Supp. at 20.) As to the mark "Sky Terrace at Hudson," several emails do indicate that Morgans hired an outside public relations firm to promote Sky Terrace, but only along with all of the Hotel's other bar and lounge spaces, including "Private Park," "Hudson Bar," and "Good Units." (*See, e.g.,* Weber Decl., Ex. B.) Morgans has submitted no evidence indicating how much it has spent on the promotion of Sky Terrace in particular.

### 2. *Consumer Surveys*

Consumer surveys and consumer testimony are often the most persuasive evidence of secondary meaning, because they are direct evidence of consumers' association of a good or service with a particular source. *See, e.g., Ergotron, Inc. v. Hergo Ergonomic Support Sys., Inc.,* No. 94 Civ. 2732, 1996 WL 143903, at *8 (S.D.N.Y. 1996) (Scheindlin, J.). Morgans has not offered any consumer surveys to demonstrate that either mark has acquired secondary meaning, although its failure to do so is not dispositive. *Centaur Commc'ns,* 830 F.2d at 1223 ("[T]hough surveys have become the usual way of demonstrating secondary meaning, they are not the only way."). However, it has failed to offer any consumer testimony in place of such a survey. Morgans cites to a single review of Hudson Terrace on the website "yelp.com" in which the reviewer recounts that, upon her friends' request to "Meet us at the Hudson Terrace!", she responded "Hudson Hotel Terrace..got it!", assuming (erroneously) that her friends were at the Sky Terrace and not the Hudson Terrace. (Asher Decl., Ex. 6.) This anecdotal, unsworn statement of a single consumer is insufficient to establish that a "substantial segment" of the

12

relevant consumer class equates the names "Hudson Sky Terrace" or "Sky Terrace at Hudson" with Sky Terrace. *Centaur Commc'ns*, 830 F.2d at 1222.

### *3. Sales Success*

Sales success is another form of circumstantial evidence that may indicate a substantial segment of consumers identifies a trade name with its source. *See Ergotron, Inc.*, 1196 WL 143903, at *8. Morgans asserts that Sky Terrace "receives a significant amount of solicited and unsolicited promotional press and is consistently ranked as one of New York's best rooftop bars, thus demonstrating its success." (Pl. Mem. in Reply in Supp. of Mot. for Summ. J. at 3.) However, Morgans has not submitted any sales figures, or data of any kind, to support this claim. Absent any "real evidence regarding the revenues generated" by Sky Terrace, Morgans' conclusory allegations of sales success cannot support a finding of secondary meaning. *Chum Ltd. v. Lisowksi*, 198 F. Supp. 2d 530, 535 (S.D.N.Y. 2002) (Motley, J.).

### *4. Unsolicited Media Coverage*

The record reflects that Sky Terrace has been featured in a number of guides to New York City's bars, including guides to "rooftop bars" or "outdoor drinking." (*See, e.g.*, Asher Decl., Exs. 35, 41, 48, 70, 79.) Sky Terrace has also garnered brief mentions in the *New York Post* and *Vogue*. (Asher Decl., Exs. 33, 59.) It has been used as a on-site location for the filming of television shows and the shooting of photographs for magazine articles (*see, e.g.*, Asher Decl., Exs. 24, 25, 26, 30, 71), although it is not clear whether Sky Terrace received mention in the credits in every instance. Despite the quantity of references, they do not suffice to create secondary meaning in the marks "Hudson Sky Terrace" and "Sky Terrace at Hudson." First, Morgans has not shown how many of the listings for Sky Terrace were solicited and how many were unsolicited. Second, Sky Terrace has been listed under a variety of names in the press, and

13

not just the names in which Morgans claims an interest. *See Fraga v. Smithaven MRI*, 866 F. Supp. 107, 112 (E.D.N.Y. 1994) (noting that "the fact that plaintiff infused the market with several names . . . decreases the likelihood that any one name acquired secondary meaning"). In many instances, the mark "Hudson Sky Terrace" is qualified, such as "Hudson Sky Terrace—Hudson Hotel" or "Hudson Sky Terrace at the Hudson Hotel." The smaller subset of listings that do refer to Sky Terrace as "Hudson Sky Terrace" and "Sky Terrace at Hudson" are simply insufficient to establish secondary meaning. Finally, Morgans has not offered any evidence to demonstrate that these listings have created the required association in the minds of the consumers who are likely to patronize Sky Terrace and Hudson Terrace. *See Centaur Commc'ns*, 830 F.2d at 1224 ("[N]ot much significance may be ascribed to such citations because it is not clear what they indicate about the relevant group of consumers.").

### 5. *Attempts to Plagiarize the Marks*

"The intent to copy a mark may be inferred from the defendant's prior knowledge of the plaintiff's mark along with the similarity between the parties' marks." *Star Indus. v. Bacardi & Co.*, No. 02 Civ. 4239, 2003 WL 23109750, at *6 (S.D.N.Y. Dec. 31, 2003) (Baer, J.). Morgans has neither demonstrated nor alleged that Hudson Terrace, or any third party, has attempted to plagiarize the marks. It has claimed, in the context of its argument that there is a likelihood of confusion between the parties' marks, that Hudson Terrace's adoption of the name "Hudson Terrace" was in bad faith because (1) it "should have known" that Morgans used similar marks and (2) Hudson Terrace has since sought to capitalize on instances of consumer confusion, such as when a consumer seeking a venue for a private event mistakenly visited Hudson Terrace instead of Sky Terrace, Hudson Terrace encouraged the consumer to hold its event at Hudson Terrace instead. (Pl. Mem. in Supp. at 17-18; Asher Decl., Ex. 16.) However, these barely

14

supported allegations are insufficient to show that Hudson Terrace intentionally copied Morgans' marks.

### 6. *Length and Exclusivity of the Marks' Use*

"[T]he length and exclusivity of a mark's use is evaluated in light of the product and its consumers." *Centaur Commc'ns*, 830 F.2d at 1225. Morgans asserts that it has used the mark "Sky Terrace at Hudson" since it opened the Hotel in 2000, and that the media began using the mark "Hudson Sky Terrace" at least prior to when the Hudson Terrace venue opened in 2008. The bulk of the evidence Morgans has offered to show use of both marks dates between 2008 and 2010, although there are a few examples of media references to "Hudson Sky Terrace" as early as 2003 and 2004. (*See* Asher Decl., Exs. 33, 37, 38.) Even assuming that use of the mark "Sky Terrace at Hudson" dates from 2000 and use of the mark "Hudson Sky Terrace" dates from approximately 2003, the length of the marks' use is tempered by third-party uses of the marks' elements "sky" and "terrace" in similar markets. Examples include: the "Sky Room," a rooftop bar and restaurant in the Marriot hotel, located in the same neighborhood as the Hotel; the "Terrace in the Sky," a rooftop bar, restaurant and event space on Manhattan's Upper West Side; the "Terrace Club," an elevated, private indoor and outdoor bar, restaurant and event space in midtown Manhattan; and "the Terrace at Sutton Place Bar," a rooftop bar in midtown Manhattan. (Decl. of Michael Sinensky in Supp. of Defs.' Mot. for Summ. J. ¶ 22.) Although Morgans may have exclusively used the specific combinations "Hudson Sky Terrace" or "Sky Terrace at Hudson," third-party uses of significant elements of these marks, both separately and in combination, to describe similar services weighs against a finding that the marks have acquired secondary meaning. *See Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 581 (2d Cir. 1991)

15

(finding that third party use of the words "Choice" and "Choices" weakened plaintiff's claim that her mark "New Choices" had acquired secondary meaning).

In sum, Morgans has not presented enough evidence to allow a jury to find that either "Hudson Sky Terrace" or "Sky Terrace at Hudson" has acquired secondary meaning. Hudson Terrace is therefore entitled to summary judgment on Morgans' Lanham Act claim.[10]

## IV. MORGANS' STATE LAW CLAIMS

The Court has supplemental jurisdiction over Morgans' state law claims pursuant to 28 U.S.C. § 1367, and additionally has jurisdiction pursuant to 28 U.S.C. § 1338, which provides for jurisdiction over unfair competition claims when those claims are "joined with a substantial and related claim under the [federal] copyright, patent, plant variety protection or trademark laws."[11] Because the Court dismisses Morgans' federal claim, it no longer possesses jurisdiction pursuant to 28 U.S.C. § 1338, and it declines to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367. *See* 28 U.S.C. § 1367(c)(3); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 304-06 (2d Cir. 2003). It is "particularly appropriate" for the Court to decline to exercise supplemental jurisdiction because adjudication of Morgans' state claims "would entail resolving additional issues of fact" beyond what is required to adjudicate its federal claim. *N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 119 (2d Cir. 2007). Morgans' state claims are therefore dismissed without prejudice.

---

[10] Because the Court finds that Morgans has not sufficiently demonstrated that its marks have acquired secondary meaning, it need not consider whether Morgans has shown that it can establish a likelihood of consumer confusion. *See Thompson Med. Co.*, 753 F.2d at 216 ("Where a mark is ineligible for protection, there is no need to examine likelihood of confusion.").

[11] Because both Plaintiff Morgans Group LLC and Defendant John Doe Company d/b/a/ Hudson Terrace maintain principle places of business in New York, (Compl. ¶¶ 2, 4), the Court does not have diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1).

16

## V. HUDSON TERRACE'S COUNTERCLAIMS

Morgans has also moved the Court for summary judgment on Hudson Terrace's counterclaims, which, as previously noted, are almost identical to Morgans' claims except insofar as Hudson Terrace alleges an additional claim under § 43 of the Lanham Act for false advertising. However, both parties focused on the merits of Morgans' claims and did not adequately address the merits of Hudson Terrace's counterclaims. The Court therefore denies Morgans' motion for summary judgment on the counterclaims without prejudice.

## VI. CONCLUSION

For the foregoing reasons, the Court DENIES Morgans' motion for summary judgment, (Dkt. No. 31), and GRANTS Hudson Terrace's motion for partial summary judgment. (Dkt. No. 25.)

SO ORDERED.

DATED:   New York, New York
         March 30, 2012

                                                    _____
                                                    KIMBA M. WOOD
                                                    United States District Judge